SAMUEL BERESFORD *v.* WM. WALLACE WARD, ET AL.

1. Mortgage notes, whether for principal or interest, are to be paid from the mortgage fund in the order of the maturity of such principal, or interest.

2. In case of a mortgage to A., securing two negotiable notes of same date and maturity—the one payable to A. and the other to B.—and the transaction shows that an equality between A. and B. was intended, then A. can not claim a superior equity as against C., who has become a *bona fide* purchaser of the note from B., without notice of such equity.

3. The vendor's lien for purchase-money is not waived by the taking of a mortgage on the premises, unless there are accompanying acts and cirstances showing an intent to rely exclusively upon the mortgage lien.

SPECIAL TERM.—On motion to distribute the proceeds arising from a sale of mortgaged premises.

The facts are sufficiently stated in the decision.

*Bates & Scarborough*, for plaintiff.

*A. H. McGuffey*, for J. L. Ross.

*Ball & Skinner*, for Smith & Gilbert.

SPENCER, J. The questions which arise in this case are presented upon a motion to distribute the proceeds of sale of mortgaged premises, on an order of this court. The facts, as admitted on the hearing, are these : Samuel Beresford, being the owner of the premises, contracted to sell them to Archibald Miles upon certain payments to be made by him, of which $2,000 remained yet to be made. On the — day of May, 1853, Miles sold them to Ward for the sum of $8,000, and Beresford made a warranty deed to Ward, conveying the premises to him for the consideration, as expressed, of $8,000. On the same day, Ward executed to Beresford a mortgage upon the same premises, in which it is expressed that the "conveyance is executed to secure the payment of a portion of the purchase-money of the aforementioned lots." The condition of this mortgage was: "That if Ward should pay to Beresford, his heirs, or assigns, the sum of $6,000, with semi-annual interest thereon, according to the tenor of six promissory notes of even date, for $1,000 each, as follows: Two of $1,000 each, payable in two years from date, to the order of said Beresford; two of the same amount, payable

in two years from date, to the order of Archibald Miles; and two of the same amount, payable in three years after date, payable also to the order of Miles—the said deed was to become void." Provided, also, that "if said Ward should cause to be paid to said Beresford, or Miles, or their order, the sum of $428.58 upon each, or any of the aforesaid lots, then as to such lot, or lots, the deed was to become inoperative, and the sum, or sums, so paid were to be credited to said Ward." Miles assigned both notes due in two years, before maturity, to the defendant, Ross, for full value, and who does not appear to have had any notice of any superior equity in Beresford. He also assigned the three year notes, before maturity, for value, to Smith & Gilbert, who are also holders without notice of Beresford's equity, except so far as the title papers themselves disclose it. The premises not being sold for enough to pay off all the debt, it is to be decided how the fund is to be apportioned, or distributed.

At the time when the petition was filed, it was supposed that the fund would be sufficient to pay all the mortgage money, and therefore both petition and answers were framed with reference to that expectation, treating the parties as having no other claims than resulted from the mortgage itself. It having been ascertained, however, by the sale, that the security will be insufficient to pay all, or, in fact, to pay in the order that the notes become due, the plaintiff asks leave to amend his petition so as to set up his claim to a vendor's lien. The motion to amend is resisted by one of the defendants, on the ground that it comes too late. So long as the fund remains in court undisposed of, and the rights of the parties with respect to it remain unadjudicated upon, it is not too late to allow either party to present the entire equity of his case when justice requires it. The power of amendment under the code is liberally granted, and should be exercised, in furtherance of justice, whenever necessary, and where the just rights of others are not prejudiced by it. In this case the amendment will be allowed, so as to present the plaintiff's entire claim upon record.

The first question to be considered is, what are the rights of the parties as presented upon the mortgage itself, standing alone. Treating the instrument as a mortgage proper, it can not be doubted that under the decision in 13 Ohio, 240, *The Bank of United States* v. *Covert, and others*, it must be so applied, in the characteristic language of Judge Lane, as "to secure the gales first due"—i. e., in the first instance, to pay the semi-annual interest due upon all the notes, prior to the maturity of any of them; the interest due upon the three-year notes, up to the time of the maturity of the two-year notes, to share with them *pari passu;* and the notes due in two years to be first paid, in equal proportions, before any thing is applied on the three-year notes. It is claimed, on the part of Smith & Gilbert, that the rule laid down in that case is not applicable to the present, because it is said the instrument referred to is not a mortgage, but a deed of trust, and must therefore be so applied as to secure all the debts *pro rata*. Let the character of the instrument be what it may, in strictness of law, it was intended as a security merely, to operate by way of mortgage, and, like a mortgage, to be applied as the notes became due, and as their payment might require. It differs in every respect from an ordinary deed of trust, given to secure debts due to different persons, and payable at different times, when it may be supposed all expect to be placed on an equal footing. It purports to be a mortgage given for purchase-money, payable at different times, and as to which it necessarily establishes a right of priority in payment.

On the other hand, it is claimed by the plaintiff, that the rule should not be applied as to him, because, as is said, he has a vendor's lien upon the premises, for his purchase-money, notwithstanding the mortgage. That in any event his equity was superior to that of Miles; and the defendants, who claim through Miles, can not occupy any better position than he could. I can readily suppose, that as between Beresford and Miles, it was not intended that the former should in anywise give way to the latter, until his whole

purchase-money was fully paid; and yet there is much to indicate, to a stranger, that his intent was to share with Miles equally, especially the clause which authorizes Ward to pay either Miles or Beresford, promiscuously, a certain sum on each lot, to be credited on either's notes, and the mortgage to be cancelled *pro tanto.* Whatever may be the rule elsewhere, it has been settled in 17 Ohio, 500, *Boos* v. *Ewing & Martin,* that the taking of a mortgage upon the premises sold, for part of the purchase-money, is not a waiver of the vendor's lien; to render it so, it must be accompanied by some act or circumstance, going to show an intent to rely exclusively upon the express lien. As to Miles, himself, he owed Beresford the balance of the purchase-money; he knew that Beresford relied upon the property to secure its payment, and it can scarcely be doubted that the equity of Beresford is superior to his.

The question remains: Can a purchaser from Miles without notice of Beresford's superior equity, occupy a more favorable position than Miles himself could? That such a state of case might exist, can not be denied any more than that the vendor's lien can not be enforced against an innocent purchaser for value, from the vendee. Beresford might so act as to lead a purchaser from Miles wholly astray, and thereby defeat his own priority. As for example: if he had held out to the world, or enabled Miles so to do, that Miles had an equal equity with himself; and such, indeed, seems to me to be the present case. The first thing to be observed is, that although he had sold to Miles for a lesser sum, perhaps, he conveyed to Ward, directly, for the expressed consideration of $8,000, taking a mortgage back to himself for $6,000, payable in sums of $1,000 each, two to himself and two to Miles, payable at the same time; and two to Miles payable at a later period. The notes thus described are said to be for the balance of purchase-money due upon the premises; due, it may be asked, from whom and to whom? and as readily answered, from Ward to Beresford, or to Beresford and Miles; all are said to be for purchase-money. No dis-

tinction is made between them in this respect; none indeed, except that which the law itself raises, from the difference in the times of payment.   When several notes are payable at the same time, and protected by the same security, the law supposes them entitled to equal privileges.   Beresford, by so taking the notes in the present instance, without an affirmance of his prior claim, has held out to others an equality between himself and Miles in regard to them.   But further than this, the closing proviso in the condition of the mortgage expressly indicates such equality.   It declares, "that if said Ward shall cause to be paid to said Beresford or Miles, or their order, the sum of $428.58 upon each or any of the aforesaid lots, then, as to such lot or lots, this deed shall become void; and the sum or sums so paid, shall be credited to said Ward."   So that it matters not to which of the parties payment might be made, the credit was equally to be allowed.   This latter provision is entirely calculated to fasten a conviction, upon the mind of a stranger to the transaction between Beresford and Miles, that Miles was a participant with Beresford in the purchase-money of this property, upon equal terms; a conviction, perhaps, already sufficiently impressed by the form of the condition itself.   As the defendant Ross was in no sort put upon inquiry in regard to Beresford's superior equity over Miles, but on the contrary, was informed by the very instrument which Beresford had taken to secure his claim, that Miles and himself stood upon an equal footing, he, Ross, had a right to rely on the assurance thus held out, and Beresford must be regaded as having waived his right, or be estopped from asserting it.

This position of the case is very clearly distinguishable from that of 1 Hopk. Ch. 569, *Van Rensselaer* v. *Stafford;* affirmed in the Supreme Court on error; 9 Cowen, 316.

There, an agreement was made between the vendor and vendee, before the conveyance, that the vendee who had sold to another (one Wright) should take a mortgage from him, first to secure the amount of purchase-money due the

vendor, and then a second mortgage for his own benefit. The vendee, accordingly, took two mortgages from the purchaser to himself, and directed them to be so recorded as that the one designed for the original vendor should have the preference; but the purchaser, neglected instructions and delivered them for record at the same time. Afterward, and while he was the owner of both mortgages, the vendee assigned to the vendor the one designed for him, and which he had agreed should be preferred. Subsequently he assigned the other to an innocent purchaser for value. It was held that, inasmuch as the vendee was the owner of both mortgages, and had established a priority in favor of the vendor, to whom he first assigned, that a subsequent purchaser coming in under him, had no better equity than he had. It was nothing more, in effect, than the common case of a person creating two equities upon the same fund, the elder always prevails. Had the second mortgage been first assigned, the case might have been different; as it was, the assignee of it knew of the prior assignment. In that case, also, no act had been done or omitted by the vendor, which was calculated in anywise to throw the assignee off his guard. Here, however, the vendor has acted otherwise. Whatever apparent equity Miles might have had under the mortgage, was the result of his own act. By taking a mortgage to himself, as before observed, possessing upon its face equality, he has enabled Miles to impose upon Ross, and unhappily must bear the consequences.

I am of opinion, therefore, that the fund in court should be distributed, to the payment of interest and principal, in the order in which it became due, and where they both became due at the same time, then *pro rata*, until the fund is disposed of.

Judgment accordingly.